# WOLF et als. v. ST. LOUIS INDEPENDENT WATER COMPANY.

The owner of a ditch is bound to use that degree of care and caution in its construction and management, to prevent injury to others, which ordinarily prudent men use in like instances, when the risk is their own.[*]

The question of negligence in the management of such property, and the degree of it, must necessarily depend, in a great measure, upon the surrounding facts, such as the existence and exposure of property below the dam, and the like; for what, under one state of facts, would be prudence, might, under a different condition of things, be gross, or even criminal, negligence.

APPEAL from the District Court of the Fourteenth Judicial District, County of Sierra.

This was an action to recover damages, caused by the overflow of defendants' flume upon the mining-claim of plaintiffs.

Plaintiffs owned and were working a mining-claim; defendants constructed a flume for the conveyance of water across the claim of plaintiffs. On the night of the 24th of March, 1857, a heavy snow-storm occurred and filled up the defendants' flume, thus causing it to overflow upon the claim of plaintiffs. A large quantity of water was precipitated on plaintiffs' claim, washing away pay-dirt, sluice-boxes, etc.

The cause was tried by the intervention of a jury. The principal question at issue was as to negligence on the part of de-

---

[*] See Hoffman v. Tuolumne County Water Company, ante, 413.

fendants in the construction of the flume.   The Court instructed the jury on this point as follows:

"That in the absence of any priority between the parties, the owner of a ditch is bound to use that degree of care and caution, in the constructing and maintaining his ditch, that a prudent man would use if all the risk were his own in case of the ditch breaking; and that if he does use such degree of caution, and if, by an unforeseen accident, which a prudent and careful man could not reasonably foresee, his ditch breaks; he is not liable.

"That this doctrine is so far modified in this State by the priority of parties, that if the ditch-owner is prior, in point of time, he is only liable for gross carelessness; while, on the other hand, if the ditch-owner is subsequent, in point of time, he is bound to use that caution which a *very prudent man* would use were the risk all his own.   And that, in the present case, if the jury believe, from the testimony, that the plaintiffs' mining-claims were located before the construction of defendants' ditch, and that the flume overflowed and injured plaintiffs' works, then it is for the jury to determine, from the testimony, whether or not the defendants have used the care and caution which very prudent men would have used, had both the ditch and claims been owned by them; and if they have, the jury should find for defendants.   But if they have not used such care and caution, then the jury should find for plaintiffs, and assess such damages as are found to have been sustained."

To which instruction, the defendants excepted.   The jury returned a verdict for the plaintiffs, and assessed the damages at $1000.   Defendants moved for a new trial, which was denied, and they appealed to this Court.

*McConnell and Niles* for Appellants.

The principal error to which we wish to direct the attention of the Court, is contained in the instruction which his Honor the District Judge, gave to the jury, and which we think to be erroneous in principle, and could hardly fail to mislead the jury.

In the case of Tenney v. The Miners' Ditch Co., 7 Cal., 335, this Court held that the doctrine *qui prior est in tempore, potior est in jure*, was applicable to questions of damage arising between ditch-owners and miners.   This Court, however, did not undertake in that decision to state how and to what extent this rule should affect such cases.   In the course of that decision, the following general language is used:

"There is no doubt that the owners of a ditch would be liable for wanton injury or gross negligence, but not for a mere accidental injury where no negligence was shown."

This general language has been sometimes considered as establishing a fixed and definite rule by which the rights and liabilities of ditch-owners and miners are to be determined.   It has

Wolf v. St. Louis Independent Water Company.

been said that, under that decision, ditch-owners prior in point of time are only liable for "wanton injury" or "gross carelessness." We do not think so extreme a doctrine could have been intended by this Court. "Wanton injury" and "gross negligence" are the extreme terms used in the laws to designate the carelessness of which a party can be guilty in the use of his property. In the case of a bailee, these terms are equivalent to fraud. We do not conceive it possible that this Court intended to say that the owners of ditches, prior in point of time, are liable only for "wanton injury" or "gross negligence." This is also evident from the latter part of the same sentence; "but not for mere accidental injury where no negligence is shown." Between "wanton injury," and "gross negligence," and "accidental injury," without negligence at all, there is a vast interval—no less than all the degrees of negligence known to our laws. If it had been the intention of this Court to lay down a fixed and definite rule, it would certainly have made use of more accurate and definite language. In the case before this Court, there was no proof of negligence whatever—and it was only necessary for the Court to say, as it did, that the defendants were not liable for a mere accidental injury—and to add, that they would have been liable for "gross negligence," to prevent the possible construction that they would not have been liable for the injury in any case, leaving the question of the degree of negligence (which would render the owner of a ditch, prior in point of time, liable) to be determined whenever it should properly arise.

The principle has been too often argued before this Court to need any argument here, that the owner of property is not liable for accidental injuries arising from the use of it. Negligence must be shown to render him liable. We merely refer to a few authorities upon this point. Parton v. Holland, 17 Johns., 99; Platt v. Johnson et al., 15 Ib., 213; 3 Man. & Gran., 515; Townsend v. Sus. Turnpike Co., 6 Johns., 90; Clark v. Foot, 8 Ib., 421; Denham v. Mussleman, 2 Blackf., 96.

From these decisions, and from the general tenor of authority upon this question, as well as from principles of sound reason, the following general conclusion may be drawn: That no man can be held responsible for a reasonable exercise of a right, or for the reasonable use of his own property.

Did not the Court below, in its instruction, require of the ditch-owner more care and caution than is required for such reasonable use? The expressions used in the law to denote the degrees of negligence and care, are derived from the law of bailments.

In Tracy v. Wood, 3 Mason, 132, Mr. Justice Story defines "ordinary negligence" to be the "omission of the care which prudent persons ordinarily take of their own property;" and "slight negligence," "to be the omission of the care which very prudent persons usually take of their own property."

In Hawkins v. Phythian, 7 B. Monroe, 661, and Sargent v. Graham, 8 Ib., 515, 518, similar definitions are given.

O. C. Hall for Respondents.

Respondents were prior in their location, and were not called upon to show gross negligence in appellants. Irvin v. Phillipps, 5 Cal., 140; Crandall et al. v. Woods et al., 8 Cal., 136; Tenney v. The Miners' Ditch Co., 7 Cal., 335.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., concurring.

In this case, the complaint is for injury done mining-claims situated below defendants' dam, and located prior to its construction. The error of the Court is, in holding the party to too strict a rule of prudence and care in the management and control of his own property. In Hoffman v. Tuolumne Water Co., decided at this term, (ante, 413,) we laid down the rule applicable to such cases. We there cited authorities from other States, which establish what we consider the correct measure of responsibility attaching to riparian owners. No distinction is made by those cases in the prudence to be exercised in the use or control of a dam, or any work of the like kind, when property, liable to be injured by its breaking, was situated at the time near by or distant; indeed, this distinction could not well be, as in all cases, in the old States, we presume, there is always, below dams erected over a stream, property exposed to injury by a sudden breach of them. Unquestionably, as the responsibility of the owner is for negligence committed by him to the injury of another, the question of negligence and the degrees of it must necessarily depend, in a great measure, upon surrounding facts, such as the existence and exposure of property below the dam, and the like. For it is obvious, that, if there was no property to be injured, or but little, or a very remote and improbable chance of damage to other persons, no such precaution would be required as if valuable and important interests were likely to be affected by neglect or imprudence. But we see nothing in this to warrant the standard which the Court below has adopted. A discreet man may be expected to exercise unusual vigilance, diligence, and care in particular circumstances; and the law requires it of him. But the Judge below goes further, and requires the owner, on the hypothetical state of facts assumed in his charge, to exercise not extraordinary prudence only, but that care and diligence which "a very prudent man" would take if the risk were all his own. We do not think that this is the proper standard. Besides being uncertain, and calculated to mislead the jury, it is positively erroneous; for, as we showed before, the law holds no man responsible for the ordinary prudent use of his own property—such use as men of common sense and prudence take of their own prop-

erty when a failure to take it exposes them to a loss of it.    This law of social duty is founded upon the obligation to pay such respect to the rights of others as we pay to our own.    And we think that'it would be raising the standard of this obligation too high, to require every man to conform his conduct, in this regard, to the habits or acts of a particular class of men—the very prudent—instead of to the mass of them.    One certain and uniform rule ought, in our judgment, to prevail in such cases, and the learned Judge below has, in the first portion of the instruction, clearly stated it.    It is to require that degree of diligence and prudence which men generally—or ordinarily prudent men—use in like instances when the risk is their own; and, as every case must depend in a great degree on its own circumstances, leaving the jury to determine whether, under the particular facts, that degree of prudence was exercised.    Both the degree and fact of prudence must, of course, we repeat, depend upon the particular circumstances; for what, under one state of facts would be prudence, might, under a different condition of things, be gross, or even criminal, negligence.

For the error indicated, the judgment must be reversed, and the cause remanded.