[L. A. No. 5261.   Department One.—January 7, 1920.]

## M. S. SUTLIFF, Appellant, v. SWEETWATER WATER COMPANY (a Corporation), Respondent.

[1] ACTION FOR DAMAGES—INJURY TO LAND—BREAKING OF ARTIFICIAL RESERVOIR—APPEAL—CAUSE OF INJURY—TRUTH OF FINDING.— In an action for damages for injury to plaintiff's land by the breaking of an artificial reservoir owned by the defendant, the finding that there was no negligence on the part of the defendant and that the overtopping and washing out of the dike and consequent injury to plaintiff's property were due to extraordinary and unprecedented flood which the defendant could not reasonably have anticipated or foreseen, must be taken as true on appeal, where the appeal is upon the judgment-roll alone and the finding not attacked.

[2] ID.—BREAKING OF RESERVOIR FROM EXTRAORDINARY FLOOD—ABSENCE OF NEGLIGENCE—NONLIABILITY OF OWNER.—An owner of an artificial reservoir, not constituting a nuisance, in the absence of negligence in its construction or maintenance, is not liable for damages for injury to property from the breaking out of the waters from an extraordinary or unprecedented flood.

[3] ACTION FOR INJURY TO LAND—FINDINGS—PROXIMATE CAUSE OF INJURY—WANT OF INCONSISTENCY.—Findings in an action for injury to land from the breaking of an artificial reservoir, that

---

2. Duty of one obstructing natural watercourses to anticipate extraordinary freshets or floods, note, **Ann. Cas.** 1918A, 1114.

the injury was proximately caused by an extraordinary and un-
precedented flood, and that none, or only a part, of the land
would have been injured but for the erection and maintenance
of the reservoir, are not inconsistent.

APPEAL from a judgment of the Superior Court of San
Diego County.  C. N. Andrews, Judge.  Affirmed.

The facts are stated in the opinion of the court.

T. M. Robinson and Bordwell & Mathews for Appellant.

Hunsaker, Britt & Edwards and E. Swift Torrance for Re-
spondent.

OLNEY, J.—This is an action to recover damages for in-
jury done to the plaintiff's land by the breaking, in the winter
of 1916, of the Sweetwater reservoir, owned by the defend-
ant corporation.  The individual defendants are officers of
the corporation and for simplicity we will treat the action as
one against it alone, since the other defendants are certainly
not liable if it is not.  The cause was tried without a jury
and resulted in a judgment for the defendant, from which
the plaintiff appeals upon the judgment-roll.

It appears from the pleadings and findings that the res-
ervoir in question is an artificial lake created by a dam across
the Sweetwater River impounding the waters of that stream.
On one side of the reservoir and at a little distance from the
dam there is a depression in the high land or hills surround-
ing the reservoir and forming its rim, and the dam was built
to a height greater than the altitude of this depression, so
that if the reservoir were full its waters would run through
the depression unless restrained.  To prevent this a secon-
dary dam, consisting of an earth dike, was built across the de-
pression.  The plaintiff's land is situate in the valley below
the depression, that is, on the other side of it from the reser-
voir.  In January of 1916 there came a flood in the Sweet-
water River of extraordinary and unprecedented size, filling
the reservoir until it overtopped the earth dike across the
depression mentioned, washed it out and released a large
volume of water from the reservoir, which flowed over the
plaintiff's land and undoubtedly damaged it substantially.
The complaint alleges that the overtopping and washing out
of the dike were due to the negligence of the defendant in

the design of the reservoir, and in the manner of its maintenance and use. The trial court found, however, that there was no negligence on the part of the defendant and that the overtopping and washing out of the dike and consequent injury to the plaintiff's property were due to the extraordinary and unprecedented flood which the defendant could not reasonably have anticipated or foreseen. [1] Since the appeal is upon the judgment-roll alone, this finding is not attacked and must be taken as true.

The chief contention of the plaintiff is that, even though the defendant were not negligent in any respect, it is still liable for any damage caused by the breaking out of control of the waters collected by its works. The plaintiff's chief reliance in this connection is the authority of *Fletcher* v. *Rylands*, decided in Exchequer Chamber (L. R. 1 Ex. 265), and affirmed on appeal by the House of Lords (L. R. 3 Eng. & Ir. App. 330). The defendant there had constructed a reservoir, the waters of which broke through the bottom into some ancient underground workings whose existence was unknown, and thence escaped into and flooded the plaintiff's colliery. For this the defendant was held liable regardless of any negligence upon its part. The leading opinion in Exchequer Chamber was delivered by Lord Blackburn and it was referred to and quoted with approval in the House of Lords. The principle applied is thus stated by Lord Blackburn: "We think that the true rule of law is, that the person, who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is *prima facie* answerable for all the damage which is the natural consequence of its escape."

This language, if taken literally and as applying universally, would seem to cover the present case, and plaintiff contends that it should govern it. To this contention there are two replies. In the first place, a subsequent English decision makes it plain that the rule so stated should be limited in its application to cases of the nature of the one then before the court, of which the present case is not one. In *Fletcher* v. *Rylands,* as was subsequently said in *Nichols* v. *Marsland,* L. R. 10 Ex. Cas. 255, "the defendant poured the water into the plaintiff's mine. He did not know he was doing so; but he did it as much as though he had poured it into an

open channel which led to the mine without his knowing it.''
In other words, the very maintenance of the reservoir in the
manner in which it was maintained itself invol-ved an inva-
sion of the plaintiff's property. For this invasion the plain-
tiff, of course, had a cause of action. The case was one coming
directly within the maxim, "*Sic utere tuo ut alienum non
laedas.*" Of this character, also, is *Parker* v. *Larsen,* 86
Cal. 236, [21 Am. St. Rep. 30, 24 Pac. 989], where the de-
fendant permitted the water in a ditch which he had con-
structed on his land to percolate through the ground from
the ditch on to his neighbor's land, saturating and injuring
it. Of the same sort, also, are those cases where one has con-
structed works on his land which accumulate and discharge
on his neighbor's land waters which would not otherwise go
there, of which there are a number of instances in our reports,
the leading one perhaps being *Ogburn* v. *Connor,* 46 Cal. 347,
[13 Am. Rep. 213]. In all of these cases the very manner
of the construction, maintenance, or use of the structure con-
stitutes or works an invasion of the neighbor's property and
rights, and, as was said in *Galbreath* v. *Hopkins,* 159 Cal.
297, 302, [113 Pac. 174], is a nuisance *per se.*

But there is a sharp distinction between such cases and
the present. The defendant's reservoir was a wholly proper
and lawful thing and its existence, maintenance, and use
worked no injury to the plaintiff's land, invaded no right
of his, and could not for a moment be said to be a nuisance.
The proximate and immediate cause of the flooding of the
plaintiff's land and its consequent injury was not the ex-
istence of the defendant's reservoir or the manner of its
maintenance or use, which were wholly lawful and innocuous,
but the overwhelming of the reservoir by an agency beyond
the defendant's control, in fact, in this case, beyond human
control. The distinction is clearly pointed out in *Nichols* v.
*Marsland* in the decision on appeal in Exchequer Chamber
(L. R. 2 Ex. Div. 1). The facts were that a series of dams
constructed by the defendant were washed out by an un-
precedented flood and the volume of water so released dam-
aged the plaintiff's property. In other words, the case is
wholly similar to the one at bar. The plaintiff there, like
the plaintiff here, relied for a recovery upon *Fletcher* v.
*Rylands,* but it was held that the cases were not the same,
that in the case before the court the proximate cause of the

damage to the plaintiff was the flood and that the defendant was not liable unless negligent. In the same case, in the decision in Exchequer (L. R. 10 Ex. Cas. 255), the question is asked, what is the difference in such a case between a reservoir and a stack of chimneys, and could it be said that no one could have a stack of chimneys except on the terms of being liable for any damage done by their being overthrown by a hurricane or earthquake? The same question might be asked concerning any innocuous and lawful structure on a man's land—his house, for example. Could it possibly be held that if a man's house were set on fire by lightning or any other cause for which he was not responsible and in turn set fire to his neighbor's house, he would be liable in damages? There is no difference between a house and a reservoir in this respect. There is, of course, a great difference in the amount of care reasonably required in the two cases. The construction, maintenance, and use of a reservoir, if it be of any size, of necessity demands a degree of care not reasonably required in the case of a house; but if this care is used, then the question of liability is the same in one case as in the other.

The second answer to the plaintiff's contention is that the question is not an open one in this state. There are a very considerable number of cases in our reports where a reservoir or ditch has been broken by flood and suit has been brought for injuries sustained thereby. Invariably a recovery has been allowed or refused according as the defendant is found to be negligent or not. *Hoffman* v. *Tuolumne Water Co.*, 10 Cal. 413, is a good illustration of these cases. There the court, in laying down the rule governing the case, said: "The general rule is, that every man may do as he chooses with his own property, provided he does not injure another's. But there is another rule as well established, which is, that a man must so use his own property as not to injure his neighbor's. This last rule, however, does not make a man responsible for every injury which may arise to another from the use which the first may make of his property. It would be an intolerable hardship to hold a man responsible for unavoidable accidents which may occur to his property by fires or casualties, or acts beyond his control, though others are likewise injured."

The court then reversed a judgment against the defendant because of an instruction by the trial court which imposed

too high a degree of care upon the defendant.   Such reversal was, of course, wholly inconsistent with the contention of the plaintiff here that the defendant is liable no matter what care it used.   To the same effect are: *Tenney* v. *Miners' Ditch Co.*, 7 Cal. 335; *Wolf* v. *St. Louis etc. Co.*, 10 Cal. 541; *Todd* v. *Cochell*, 17 Cal. 97; *Everett* v. *Hydraulic etc. Co.*, 23 Cal. 225; *Campbell* v. *Bear River etc. Co.*, 35 Cal. 679; *Weiderkind* v. *Tuolumne Water Co.*, 65 Cal. 431, [4 Pac. 415]; *Moore* v. *San Vicente Lumber Co.*, 175 Cal. 212, [165 Pac. 687]; *Bacon* v. *Kearney Vineyard Syndicate*, 1 Cal. App. 275, [82 Pac. 84].

It is true that in all of these cases, negligence on the part of the defendant was relied upon by the plaintiff and that the question of absolute liability on the part of the defendant was not presented to the court or discussed.   Nevertheless, it is repeatedly laid down that the governing rule of law is that the defendant is not liable unless he has been negligent, and the actual decisions of the cases are consistent with this rule only.   [2]  Under such circumstances the rule so declared and followed must be taken to be the law, and the fact that the propriety of the rule has not been questioned or discussed is not a sufficient justification for reopening the subject.

The plaintiff contends, also, that in spite of the finding of the trial court that there was no negligence on the part of the defendant, such negligence, nevertheless, appears because of the fact that the top of defendant's main dam—the one across the river—was higher than the top of the earthen dike across the depression, so that the waters of the reservoir, before raising to the top of the main dam and flowing over it, would flow over the earthen dam and wash it out.   It is not at all certain that it appears from the findings that the top of the main dam was higher than the top of the earthen dike.   Assuming, however, that it does appear, it does not by any means follow that there was any negligence in the design of the reservoir.   It does not appear, for example, that the main dam itself was not an earthen dam so that water overflowing it would be much more dangerous than water overflowing the shallower earthen dike.   Passing this and assuming that the main dam was a solid masonry or concrete structure so protected that it would not be displaced by a large volume of water flowing over it, the question of whether its maintenance at a height greater than the top of the earthen

dike was negligence would depend almost entirely upon the relation between the capacity of the spillway provided and the volume of flood reasonably to be foreseen and anticipated and, therefore, to be provided for. The complaint alleges that the spillway was not adequate. Upon this point the trial court found specifically that it was adequate to carry off all waters that prior to the time of the flood in question it might reasonably have been anticipated would flow into the reservoir after it was filled. This finding completely negatives the plaintiff's contention that there was negligence in the respect claimed.

[3] The plaintiff also contends that the findings are contradictory in that it is found, on the one hand, that the injuries to appellant's property were proximately caused by an extraordinary and unprecedented flood, and, on the other hand, that none, or only a part, of defendant's land would have been injured but for the erection and maintenance of the reservoir. Plaintiff's point is that the flood of 1916, extraordinary and unprecedented as it was, would yet not have injured his property if it had not been for the existence of the reservoir. This may be true, but it does not follow that the proximate cause of the injury was not the flood. This point is really nothing more than the contention that because the defendant was responsible for the existence of the reservoir and because the plaintiff's land would not have been injured except for its existence, the defendant is liable regardless of negligence on his part. This is simply the point first discussed in another form.

Judgment affirmed.

Lawlor, J., and Shaw, J., concurred.