[Civ. No. 3381.  Third Appellate District.—January 19, 1928.]

M. B. COHN, Respondent, v. GEORGE H. VALENTINE et al., Appellants.

Phillip Cohen, J. B. Irsfeld and Douglas Fawcett for Appellants.

Newby & Palmer and Dee Holder for Respondent.

FINCH, P. J.—In November, 1923, the plaintiff was in possession, under an agreement of purchase, of certain lots in the city of Los Angeles, together with the dwelling-house thereon and its "furniture and furnishings." The agreement provided for the payment of $1,000 on the purchase price at the time of the execution of the contract, $19,000 on or before January 10, 1924, and the execution by the plaintiff of his promissory note for $60,000, payable on or before three years after November 15, 1923, secured by a mortgage on said real property. The pleadings, which cover nearly a hundred pages of the typewritten transcript, are

too lengthy to be given even in substance, but the findings of the court sufficiently indicate the issues in controversy. The court found:

That "the defendants Charles H. O'Connor and William C. O'Connor were copartners . . . and at all times herein mentioned . . . were duly and regularly licensed auctioneers"; that the plaintiff employed them to sell said property at public auction, they to pay half the cost of advertising the sale and to receive as compensation for their services "one-half of all money derived from the sale of the furniture and furnishings in excess of $10,000, and . . . one-half of all money derived from the sale" of the real estate "in excess of $90,000"; that at the auction sale, held December 6, 1923, the furniture and furnishings were sold for the total sum of $10,332.35; that the real estate was sold to defendants Valentine and Kane for $90,000; that "Mrs. Marie Hummel was the duly appointed and acting clerk of said auction sale, and as such clerk . . . she then and there duly and regularly entered a memorandum of said sale in the said auctioneers' book of sales . . . and the said memorandum . . . specified as the name of the person for whom said auctioneers sold the said real estate, the name of M. B. Cohn, the plaintiff herein, and described said real estate . . . and the price at which the same was sold, . . . and the terms of the sale upon which said real estate was sold, and the name of the buyers of said real estate, to-wit, the defendants George H. Valentine and William Kane; that at the time said real estate was so offered for sale, by said auctioneers, the terms of the sale were duly and regularly announced by said auctioneers, it being announced that 15% of the purchase price thereof should be paid by the purchaser immediately upon the closing of said sale . . . and that said property should be taken by the purchaser, subject to a mortgage of $60,000, which the purchaser should assume and agree to pay, and that the balance of the purchase price of $16,500 was to be paid within thirty days from the date of the sale, and it was announced at said time that a party in the crowd was willing to take a second trust deed for $10,000 on the . . . property as part of the purchase price thereof"; that the plaintiff was present and was aware of the facts in connection with the sale and made

no objection thereto; that "immediately after said real estate was knocked down and sold to the defendants Valentine and Kane, the said Valentine and Kane signed and executed a certain deposit receipt . . . wherein the terms of the sale of said real estate as above set out, and announced by the auctioneer were duly entered and written, and at said time and place they paid to the said auctioneers . . . as a part of the purchase price of said real estate . . . the sum of $13,500"; that "on the 8th day of December, 1923, the defendants Valentine and Kane deposited with the defendant Guaranty Building and Loan Association the sum of $6,500 as an additional payment on the purchase price of said real estate, and stated in writing that they would execute a note and trust deed for $10,000 upon said real estate as and for the balance of the purchase price of the same; that on the 9th day of January, 1924, and within a reasonable time after the said auction sale of said real estate, the plaintiff M. B. Cohn was ready, able and willing to execute a deed, conveying the said real estate to the defendants Valentine and Kane, and to furnish a certificate of title therefor showing the title to be merchantable and to fully carry out the terms of the sale of said real estate as above set forth; that on said 9th day of January, 1924, the said Valentine and Kane undertook to cancel the said sale, and refused to execute the said note and trust deed, and refused to proceed with said transaction and . . . thereafter demanded the repayment to them of the $6,500, paid by them to the defendant Guaranty Building and Loan Association upon the purchase price of said land and the $13,500 paid by them to the defendants O'Connor as a part payment of the purchase price of said land; and said defendants Valentine and Kane have refused and now refuse to proceed to close the said sale and pay the moneys for said land, although the same has been demanded of them by plaintiff; that the plaintiff made and executed a deed conveying the said real estate to the defendants within a reasonable time after the said real estate had been sold to the said defendants Valentine and Kane and delivered the same to the said defendants' agent, the Guaranty Building and Loan Association, on the 8th day of January, 1924, for the said defendants Valentine and Kane; . . . that the de-

fendants O'Connor have retained and now have in their possession and control, the said sum of $13,500 that was paid to them by the said defendants Valentine and Kane as a part of the purchase price of said real estate; that the defendant Guaranty Building and Loan Association received on the 8th day of December, 1923, from the defendants Valentine and Kane the sum of $6,500 as a payment for the plaintiff upon the purchase price of said real estate, which sum was to be held for the plaintiff, and the said defendant Loan Association has ever since kept and retained said money.''

Judgment was entered in favor of the plaintiff against Valentine and Kane for $30,000, with interest thereon at the rate of seven per cent per annum from December 6, 1923; against Charles H. O'Connor and William C. O'Connor for $13,500, less $722.08 as commissions and expenses, with interest for the same period and at the same rate as in the judgment against Valentine and Kane; and against the Guaranty Building and Loan Association for $6,500. The judgment provides that the said amounts for which judgment is rendered against Charles H. and William C. O'Connor and the Guaranty Building and Loan Association ''be credited upon the judgment against the said defendants Valentine and Kane, and that the balance of said amount adjudged to be due from the said defendants Valentine and Kane to the said plaintiff, to-wit: . . . the sum of $11,876.89 . . . be, and the same is hereby declared to be, a vendor's lien upon the property . . . and that the said vendor's lien be, and the same is hereby, foreclosed, and the said property to be sold as other lands are sold under execution, subject to the $60,000 mortgage upon said property which the said defendants Valentine and Kane assumed and agreed to pay." The usual provision is made for entry of a deficiency judgment against Valentine and Kane in the event of the proceeds of the sale proving insufficient to satisfy the judgment for $11,876.89, with interest and costs and the expense of making the sale. The O'Connors and Valentine and Kane filed separate notices of appeal.

In the O'Connor appeal it is said in appellants' opening brief: "The plaintiff testified that the contract between him and the auctioneers was that the auctioneers were

to receive one-half of all the real property brought at auction over and above $90,000. . . . On the other hand, C. H. O'Connor, W. C. O'Connor, and Mrs. Hummel . . . each gave evidence that the contract . . . was that the auctioneers should receive one-half of what the real property brought at auction over and above what the same had cost the seller.'' It is then argued that it is improbable that the O'Connors would have entered into a contract on the terms stated by the plaintiff. This is an argument upon the weight of the evidence rather than its insufficiency to support the findings. The conflict in the evidence is substantial and it is elementary that a trial court is not bound to decide in conformity with the declarations of the greater number of witnesses.

It is urged that the judgment against the O'Connors for interest and costs is erroneous. ''The authorities are practically uniform in holding that an auctioneer receives a deposit of earnest money in the capacity of a stakeholder.'' (2 R. C. L. 1153; *Montgomery* v. *Pacific C. L. Bureau*, 94 Cal. 284, 290 [28 Am. St. Rep. 122, 29 Pac. 640].) When the plaintiff delivered his deed to Valentine and Kane's escrow-holder, conveying a good title to them, and had complied with· the terms of the sale on his part to be performed, the deposit money became a portion of the cash payment and the property of the plaintiff, less the charges and commissions of the auctioneers. (*Montgomery* v. *Pacific C. L. Bureau, supra.*) The complaint alleges that the plaintiff demanded payment to him of the deposit money and that the O'Connors refused to pay any part thereof. The only defense set up in their answer reads as follows: ''Admit that they have refused to pay the plaintiff the said sum of $13,500 for the reason that said plaintiff has refused to pay these defendants the amount due by plaintiff to them for services rendered as will be more specifically set forth hereafter.'' Nothing further is set forth except by way of counterclaim, in which it is alleged that the plaintiff agreed to pay the auctioneers one-half of the proceeds of the sale over and above $80,000; that in accordance with the terms of that agreement the plaintiff was indebted to the O'Connors in the sum of $10,231.42, for which sum judgment was demanded. It was further

alleged in the counterclaim that Valentine and Kane had demanded the return of the deposit money and that the O'Connors had not sufficient information to enable them to determine to whom such money belonged, and the court was asked to determine to which claimant it belonged. "Where both vendor and vendee are adverse claimants to the deposit money, the auctioneer may file a bill of interpleader, except where he himself claims an interest therein." (2 R. C. L. 1154.) "The plaintiff in interpleader must be a disinterested stakeholder." (*Conner* v. *Bank of Bakersfield*, 183 Cal. 199, 203 [190 Pac. 801].) The O'Connors were not mere stakeholders, but as against the plaintiff they asserted the right to retain the greater part of the money in their custody. The award of interest is based on their own allegation that they refused to pay over the deposit "for the reason that said plaintiff has refused to pay these defendants the amount due" them for their services. The court found against the O'Connors as to the amount due them from the plaintiff. The portion of the deposit money to which the plaintiff was entitled was readily ascertainable by mere computation and, therefore, under the circumstances stated, interest was properly allowed thereon. The plaintiff was clearly entitled to his costs of suit against the O'Connors. (Code Civ. Proc., sec. 1022.)

Appellants Valentine and Kane make the following contentions:

"That no title passed to the purchasers at the auction sale or by the contract entered into directly after the sale.

"That no title was ever delivered or tendered to the purchasers by the seller or by any person for him.

"That the seller defaulted in not obtaining a guarantee of title vesting the property in the purchasers and in requiring delivery to him of the purchaser's copy of the contract showing payment of $13,500 to the auctioneers.

"That the seller had no title within 30 days after the auction sale to convey to the purchasers.

"That the seller not having performed or tendered performance cannot maintain this action.

"That no title having passed to the purchasers and the record before the court showing title to the property in the

plaintiff, the plaintiff cannot foreclose a vendor's lien on the premises.''

In their closing brief it is said: ''The contention of the purchasers is that the parties made and entered into a written agreement immediately after the fall of the hammer, . . . and this agreement measures the rights and duties of the parties.''· The court found that such agreement was so entered into, ''wherein the terms of the sale of said real estate . . . were duly entered and written.'' In so far as material to the questions raised by the appellants, the agreement reads as follows:

''Received from George H. Valentine and W. L. Kane the sum of $13,500 as a deposit on account of the purchase price of the following described property (describing it), for the purchase price of $90,000. The balance of the purchase price is to be paid within thirty days from date hereof, as follows, to-wit: $16,500, assume $60,000 mtge, due 3 yrs. Interest 7% per annum, payable quarterly. It is understood that seller will place a second trust deed for $10,000 on above property, Int. 7% per annum, payable quarterly, 2½ yrs. . . . In the event said purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid herein shall, at the option of the seller, be retained as liquidated and agreed damages. . . . In the event the title to said property shall not prove merchantable and said seller shall not perfect, or be able to perfect, the same within a reasonable time from this date, the purchaser shall have the option of demanding and receiving back said deposit and shall be released from all obligation hereunder. . . . The evidence of title is to be in the form of a continuation of present title, issued by a responsible title company and to be furnished and paid for by the seller. . . . Time is of the essence of this contract.'' The receipt was signed, ''C. H. O'Connor & Son by W. C. O'Connor, Real Estate Agent.'' Following this signature there is indorsed, ''I agree to purchase the above described property on the terms and conditions herein stated. George H. Valentine and W. L. Kane, purchaser.''

█ In a case involving a similar state of facts it was said: ''The vendors have retained the legal title, and evi-

dently as security for the purchase money. Their position is, in some respects, similar to what it would have been had they executed a conveyance to the vendee and taken from him a mortgage upon the property. . . . A vendor retaining the title may . . . sue at law for the balance of the purchase money, or' file his bill in equity for the specific performance of the contract, and take an alternative decree that if the purchaser will not accept the conveyance and pay the purchase money, the premises be sold to raise such money, and that the vendee pay any deficiency remaining after the application of the proceeds arising upon such sale. . . . The plaintiffs tendered their deed under the contract, and as its acceptance was declined, they pray a sale of the premises, and such sale was decreed. . . . The decree is not, as it should be, in the alternative. We do not, however, deem it necessary to direct a modification of the decree, as the defendants can still, at any time, arrest a sale and take a conveyance, upon payment of the amount adjudged due of the purchase money, interest thereon, and the costs of this suit." (*Sparks* v. *Hess,* 15 Cal. 186, 194. See, also, *Gessner* v. *Palmeteer,* 89 Cal. 89, 92 [13 L. R. A. 187, 24 Pac. 608]; *Amaranth Land Co.* v. *Corey,* 182 Cal. 66, 67 [186 Pac. 765]; *Maltby* v. *Conklin,* 50 Cal. App. 201, 205 [195 Pac. 280].) The foregoing cases furnish a sufficient answer to the first two and the last of appellants' contentions.

■ The escrow clerk of the Guaranty Building and Loan Association testified that on January 8, 1924, he had a report on the state of the title, signed by one of the officers of the Title Insurance & Trust Company; that Valentine and Kane made no objection that the title was not good, but refused to complete the transaction because "the mortgage did not contain a release clause." The agreement contained no provision for such a release clause. The witness further testified that on January 8, 1924, he "could have furnished them (Valentine and Kane) at that time a guarantee of title, or a continuation of a guarantee of title, . . . showing the title vested in them, or vested in anyone whom they might order"; that the practice in such cases is to order the "Title Insurance & Trust Company to bring down the title" after both parties have made the

necessary deliveries in escrow, and that disbursements are made and the transaction closed when a proper certificate of title is received. This is in harmony with the holding in *Neher* v. *Kauffman*, 197 Cal. 674, 682 [242 Pac. 713]. The plaintiff had performed his part of the contract up to the time the purchasers refused to proceed further. He had delivered to the escrow-holder a deed conveying the property to the plaintiff and the plaintiff's deed conveying it to Valentine and Kane. The latter refused to execute the necessary instruments to complete the transaction and attempted to rescind without any just cause therefor.

The plaintiff was not required by the terms of the sale or of the said agreement to convey title within thirty days. No time for such conveyance was mentioned in such agreement or in the announcement by the auctioneers of the terms of the sale. The plaintiff, therefore, had a reasonable time within which to convey title, and the court was warranted in finding that he had performed the agreement on his part within a reasonable time. In his letter of instructions to the escrow-holder the plaintiff directed the former to "obtain receipt for $13,500 signed by C. H. O'Connor and Son in favor of George H. Valentine and William L. Kane assigned to M. B. Cohn." This direction was not expressly made a condition precedent to the delivery of the deed to the purchasers and it is not clear whether it was so intended. It need not be determined whether the plaintiff was justified in demanding the assignment to him of this so-called receipt, which constituted the agreement between the parties hereinbefore mentioned. The condition, if such it was, did not warrant the cancellation of the agreement by the purchasers, they not having performed or offered to perform the agreement on their part.

In their escrow instructions they stated, "Mortgage to contain release clauses of $333.33 a front foot on Argyle." The agreement between the parties did not provide for such a release clause, nor did it provide for deliveries in escrow by either party. The escrow instructions of the purchasers were such as to prevent the delivery of the deposit of $6,500 to the plaintiff without violation of such instructions. Under such circumstances, the purchasers having refused to perform, the rights of the parties must be determined in

accordance with the terms of the agreement. Under the authorities cited the judgment entered in favor of plaintiff against Valentine and Kane is proper except in the amount thereof.

The judgment against those defendants is for $30,000, less the amount of the judgments against the other defendants, and interest. Since the judgment against the O'Connors was reduced by the sum of $722.08, which the plaintiff owed them, the net sum for which judgment was given against Valentine and Kane was increased in a like amount, thus in effect giving the plaintiff judgment against them for the amount of his indebtedness to the O'Connors. The plaintiff is entitled to interest only from the ninth day of January, 1924, when, as the court found, he was ready, able, and willing to convey title to the purchasers. In his complaint he prays for interest at seven per cent per annum from January. 8, 1924. He was given judgment for interest against the O'Connors on the deposit of $13,500. This leaves only $16,500 on which the purchasers were liable for interest. Judgment was rendered November 19, 1924. Interest on the $16,500 up to that time amounted to $994.58. This sum added to the remaining $10,000, which the purchasers owed the plaintiff on the principal, makes a total of $10,994.58, for which sum the plaintiff was entitled to judgment, instead of $11,876.89, for which net sum the court entered judgment.

The judgment is modified by striking therefrom "$11,-876.89" wherever the same appears in the judgment and substituting in place thereof "$10,994.58." As so modified the judgment is affirmed, the respondent to recover costs of appeal incurred by him in the appeal of the O'Connors, and the appellants Valentine and Kane to recover their costs of appeal against the respondent.

Plummer, J., and Hart, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 19, 1928.

All the Justices present concurred.