[Civ. No. 4498. Third Appellate District.—June 29, 1932.]

DALLAS H. GRAY et al., as Trustees, etc., Respondents, v. FRED B. NEUHOFF COMPANY (a Corporation), Appellant.

Sparling & Teel and Courtney A. Teel for Appellant.

Treadwell, Van Fleet & Laughlin for Respondents.

PLUMMER, Acting P. J.—The plaintiffs in this action had judgment for the recovery of two installments in the total sum of $35,000, being a part of the purchase price of certain real property situate in the city of Lodi, upon which there was then and there standing a canning factory, including all machinery and equipment therein and belonging thereto, save and except a few specified articles. From this judgment the defendant appeals, and upon this appeal contends: 1. That the contract price, or that the amount of the two unpaid installments did not and do not constitute the proper measure of damages; 2. That the contract was not authorized by the defendant; in other words, that the con-

tract apparently executed by the company is not in fact the contract of the corporation; 3. That no proper offer was made by the plaintiff to deliver possession; 4. That the contract was obtained by the fraudulent representations of one Williams as to the freight rate between the cities of San Francisco and Lodi; 5. That the plaintiff made some fraudulent representations regarding the boilers, a part of the equipment of the canning plant; 6. That there was a parol agreement to restore the plant after the spinach pack had been completed, i. e., to change the machinery for canning the spinach pack and installing in place thereof the machinery for canning fruit.

Appellant's contention as to the question of damages is based upon sections 3307 and 3311 of the Civil Code. These contentions are all resisted by the respondent.

The record shows that on or about the seventh day of June, 1927, the Lodi Canning Company, a corporation, being the owner of the real estate upon which the canning factory was located in the city of Lodi, and also of a large portion of the machinery and canning equipment contained therein, entered into a written agreement with the California Cooperative Producers, a corporation, for the sale and transfer to it of the property just referred to. This agreement between the Lodi Canning Company and the California Cooperative Producers Company provided for installment payments of the purchase price of the property involved in this action, in the sum of $150,000, upon which there had been paid at the time of entering into a contract between the California Cooperative Producers, a corporation, and the defendant Fred B. Neuhoff Company, a corporation, a sufficient number of installments so that there remained only the sum of $112,500 still owing to the Lodi Canning Company on account of the purchase price of the property described in the agreement heretofore mentioned as dated June 7, 1927.

The agreement between the Lodi Canning Company, a corporation, and the California Cooperative Producers, a corporation, is expressly referred to and made a part of the agreement entered into between the California Cooperative Producers, a corporation, and Fred B. Neuhoff Company, a corporation, on the twenty-seventh day of February, 1929, whereby the California Cooperative Producers, a corporation, transferred all its right, title and interest in, to, and

under and by virtue of the agreement existing between the Lodi Canning Company and the California Cooperative Producers, a corporation, dated June 7, 1927, paragraph 1 of the agreement reading as follows: "The first party does hereby transfer, assign and set over unto the second party all its right, title and interest in, to, under and by virtue of said agreement marked 'Exhibit A', it being understood, however, that there shall be excluded from such assignment any right to use the brands and labels of the Lodi Canning Company referred to in said 'Exhibit A'; it being further understood that with respect to Lodi Cannery lug-boxes, that the first party shall only be obligated to deliver to the second party at least 10,000 Lodi Cannery lug-boxes." Paragraph 2 of the agreement between the parties just referred to reads as follows: "The second party agrees to perform, at the time and in the manner provided in said 'Exhibit A', all of the terms and conditions of said 'Exhibit A' on the part of the California Cooperative Producers, from and after the date hereof, to be performed, except the following:" (Here follows some exceptions relating to the payment of taxes and street assessments, and not material to be considered herein). The contract then provides for placing of a number of instruments, including bills of sale, deeds, agreements, etc., in escrow with the Lodi Branch of the Bank of America. The purchase price agreed to be paid by the defendant to the California Cooperative Producers was the sum of $37,500, $2,500 being paid upon the execution of the agreement; $20,000 was contracted to be paid on or before the twenty-fifth day of April, 1929, and $15,000 on or before the fifteenth day of June, 1929, upon which payments the defendant was entitled to receive full possession of all the real and personal property included in the contracts.

The record further shows that there existed a contract between the California Cooperative Producers, a corporation, and the Frank Smith Packing Company, by which the Frank Smith Packing Company agreed to sell certain machinery to the California Cooperative Producers, a corporation, upon a written contract of sale providing for partial payments. This contract appears to have been taken up by the defendant, and a new contract covering the machinery included in the first contract, executed between the Frank Smith Company and the defendant in this action; the record showing,

also, that the California Cooperative Producers, a corporation, had assigned and set over all its right, title and interest in and to the machinery, tools, equipment, office furniture and fixtures, and everything included within its contract with the Frank Smith Packing Company.

The agreement between the parties hereto further provided that upon default of the defendant the party of the first part to the agreement might, at its option, re-enter into possession of the real and personal property referred to herein, and also be entitled to retain all moneys paid under the contract as liquidated damages for the nonfulfillment thereof, or the first party might, at its option, claim such damages for such breach, as it might be entitled to by law, or claim specific performance of the agreement.

In pursuance of the agreements to which we have referred, there was deposited with the Lodi Branch of the Bank of America, chosen as escrow-holder by the parties, copies of the contracts, title insurance policy required by the contract, appraisement referred to in the agreement, bill of sale of the personal property, deed of the real property from the Lodi Canning Company to the defendant, bill of sale from the Lodi Canning Company to the defendant, escrow instructions from the Lodi Canning Company, escrow instructions from the plaintiff, bill of sale to the defendant, and as we have stated, a new contract was also entered into directly between the Frank Smith Packing Company and the defendant.

The contract also provided for a reassignment to the plaintiff, in the event of a breach by the defendant, and provided, further, that the California Cooperative Producers, a corporation, might remain in possession of the plant until it had finished the pack of spinach, full possession of the plant not to be delayed longer than April 25th. The plaintiff, under the agreement, likewise was allowed the use of certain warehouses until June 15th, for limited purposes.

All the papers in escrow were to be turned over to the defendant upon making the installment payments as provided for in the agreements. The installments on the purchase price provided by the agreements to be paid on the twenty-fifth day of April, 1929, and June 15, 1929, not having been made, this action was begun.

Prior to the twenty-fifth day of April, 1929, the California Cooperative Producers, a corporation, wrote to the de-

fendant stating that it would be ready to turn over possession of the plant on the twenty-fifth day of April, 1929, according to its agreement, and likewise, later notified the defendant that it would be ready to surrender full possession of the warehouses, to which it had limited possession, on the fifteenth day of June, 1929, and in this manner also tendered to the defendant possession of all of the property of which it had any possession, included within the agreements to which we have referred.

The agreements to which we have referred obligated the defendant to pay to the Lodi Canning Company, in installments from time to time, the unpaid portion of the purchase price of the property mentioned in the agreements. Only two installment payments were to be made to the California Cooperative Producers, a corporation. These facts must be borne in mind in order to determine the remedies available to the plaintiffs in this action, and whether the correct procedure was followed.

 Basing its contention on the theory that the contracts to which we have referred were wholly executory, appellant insists that this action is governed by sections 3307 and 3311 of the Civil Code, and that the detriment caused by a breach of the agreement to purchase an estate in any real property is deemed to be the excess, if any, of the amount which would have been due to the seller under the contract, over the value of the property to him, and that in so far as the personal property is involved, the damages suffered by the plaintiff under the provisions of section 3311 of the Civil Code can only be the difference between what the property might have been sold for and the agreed price, and that as there is no testimony showing any difference between the value of the property and the agreed price, and no showing of any resale of the personal property, the evidence fails to support any judgment for the plaintiffs.

In view of the fact that the agreements only provided for the payment of two installments of the purchase price to the California Cooperative Producers, a corporation, and a number of installments of the purchase price thereafter to the Lodi Canning Company, are the contentions of the appellants that sections 3307 and 3311 of the Civil Code governing this case, tenable, and is anything required to be done by the California Cooperative Producers, a corporation,

other than the act performed by them, to wit, notification to the defendant that they would be ready to surrender full possession of the property to the defendant on the dates which we have named?

At the time of the beginning of this action for the collection of the two installments, none of the installment payments provided to be paid by the defendant to the Lodi Canning Company had become due. If the agreements entered into between the parties were valid, and the minor acts therein conditioned to be performed by the parties had been performed, then at the date of the beginning of this action the obligations of the California Cooperative Producers, a corporation, and the defendant, were as follows: 1st. Surrender full possession of the plant to the defendant; and 2d. Payment by the defendant of the two installments. All of the papers to which we have referred were to remain in possession of the escrow-holder. Under the agreements, at the dates referred to, all that the California Cooperative Producers, a corporation, could do was to surrender possession; all that the California Cooperative Producers, a corporation, could demand of the defendant was the payment of the two installments mentioned in the agreement.

That the right of action accrued upon the failure of the defendant to pay the two installments on the purchase price, although it be conceded, as contended for by the appellant, that the contract as a whole is executory in character, is fully sustained by the cases hereinafter cited. The interest of the respondent corporation was limited to the two unpaid installments, and its interest was therefore independent and not limited to any part of the agreement providing for payment of subsequent installments to the Lodi Canning Company. The respondent corporation had assigned all its right, title and interest in the contract with the Lodi Canning Company to the defendant. The defendant, by its agreement, had covenanted to pay all of the remainder of the purchase price of the property involved in this action, other than the two installments, to the Lodi Canning Company, and had assumed all the burdens theretofore borne by the respondent corporation. This assignment had been accepted by the Lodi Canning Company, and the defendant, by reason of the agreements, had been substituted in its relations to the Lodi Canning Company, in the place and

stead of the respondent corporation. Thus, a complete nova-
tion had been effected.

The law governing actions to collect partial payments is
thus stated in 25 California Jurisprudence, page 600:
"When the purchase money is payable in installments, and
the conveyance is to be executed on the day of the last pay-
ment, or on the payment of the whole price on any previous
day, the covenants to pay the installments falling due be-
fore the time for the execution of the deed are independent,
and suit may be brought thereon without conveying or offer-
ing to convey."

In 6 California Jurisprudence, page 367, we also find the
following: "If, in a contract for the sale of land, the pur-
chase money is to be paid by installments, and a deed is not
to be given until the whole price is paid, the premises of
the vendee are independent, and the vendor may sue upon
all of them except the last, without averring a willingness
to perform on his part or tendering a deed." The title,
deeds, bills of sale, etc., placed in escrow were not to be de-
livered to the defendant until full performance of the con-
tract with the Lodi Canning Company, to perform which,
and to make the installment payments therein provided for,
the defendant had covenanted and agreed to perform. Sur-
render of such possession only, as the respondent corporation
held, was its only obligation, and its willingness to perform
this act will be considered further on in this opinion.

In 27 Ruling Case Law, 460, section 173, the rule which
we have stated is likewise affirmed. We quote: "Undoubt-
edly, the agreement to convey is independent as regards the
payment of instalments falling due before the day set for
the conveyance, and a recovery may be had therefor, with-
out an offer to convey, and it has been held that even after
the last instalment is due, the vendor may sue for the prior
instalments as to which his agreement to convey is inde-
pendent, without averring an offer to convey. The better
view, however, seems to be that if the vendor allows the
whole to become due, the payment of the price then becomes
a dependent and concurrent condition, and nonpayment
alone does not put the purchaser in default."

In *Hill* v. *Grigsby*, 35 Cal. 656, the Supreme Court affirms
the law as above stated, in the following language: "When
the purchase money is payable in instalments, and the con-

veyance is to be executed on the last day of payment, or upon the payment of the whole price, or at any previous day, the covenants to pay the instalments falling due before the time appointed for the execution of the conveyance are independent covenants, and suit may be brought thereon without conveying or offering to convey." To the same effect is the case of *McCroskey* v. *Ladd,* 96 Cal. 455 [31 Pac. 558].

A similar question was before the court in the case of *Security Inv. Co.* v. *Bartram,* 54 Cal. App. 540 [202 Pac. 337], and it was there said: "It is the contention of the appellant that plaintiff's only remedy is for damages as provided in section 3307 of the Civil Code, or for the specific performance of a contract. In this he is mistaken. The plaintiff has a right to sue to collect each unpaid installment as it becomes due. (Citing *Boone* v. *Templeman,* 158 Cal. 290 [139 Am. St. Rep. 126, 110 Pac. 947]; *Glock* v. *Howard, etc.,* 123 Cal. 1 [69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713].) The action is not *ex delicto* but *ex contractu,* and therefore damages need not be alleged."

If we agree with the contention of the appellant that the agreement involved herein is executory, nevertheless, the installment provisions constitute contracts for the direct payment of money, and the two installments to which we have referred being independent covenants, section 3302 of the Civil Code applies. That section reads: "The detriment caused by the breach of an obligation to pay money is deemed to be the amount due by the terms of the obligation, with interest thereon."

A number of cases have been cited by respondent to the effect that where the vendor tenders a deed, he may recover the full purchase price. We find this statement of the law supported in the following cases: *Weisenberg* v. *Hirschhorn,* 97 Cal. App. 532 [275 Pac. 997]. The opinion in that case cites a number of authorities. See, also, *North Stockton etc. Co.* v. *Fischer,* 138 Cal. 100 [70 Pac. 1082, 71 Pac. 438]; *Amaranth Land Co.* v. *Corey,* 182 Cal. 66 [186 Pac. 765]; *Siem* v. *Cooper,* 79 Cal. App. 748 [250 Pac. 1106]. Other cases might be cited, but we deem the foregoing sufficient.

In *Amaranth Land Co.* v. *Corey, supra,* it is said: "A vendor retaining the legal title to land sold may waive his security and bring an action at law for the purchase money,

or file his bill in equity for specific performance of the contract.'' No questions as to the right of the appellant to possession of the title papers placed in escrow are involved in this proceeding. Such rights on the part of the appellant would accrue only upon its complete fulfillment with the Lodi Canning Company and its assumed obligations.

We do not deem it necessary to review the cases cited by the appellant on the theory that the agreement is executory, and that tender of instruments of conveyance are dependent acts concurrent upon full payment by the vendee, for the simple reason that the theory advanced by the appellant, and in support of which the cases are cited, is not a correct view of the law involved in this action, and the right of the respondents to maintain this action is in nowise limited thereby. Nor do we need to follow the argument of counsel relative to the distinction between an agreement to sell and an agreement of sale. ■■ The fact that the appellant, by reason of its failure to comply with the conditions of the contract assumed by it with the Lodi Canning Company, and that the Lodi Canning Company, by reason of the failure of such payments, foreclosed all the rights of the defendant therein, is no bar to this action. All the right, title and interest of the respondent corporation were assigned to the appellant for a consideration. The consideration for the assignment of such interest is a debt or an obligation due from the appellant to the respondent corporation, and may be collected irrespective of whether the appellant did or did not eventually secure title to the property, or allowed it to pass back to the original vendor by nonpayment of subsequent installments. (See *Ferguson* v. *McBean,* 91 Cal. 63 [14 L. R. A. 65, 27 Pac. 518], where the rights of an assignor are held to be as above stated. See, also, *McClintock* v. *Southern Penn. Oil Co.,* 146 Pa. St. 144 [28 Am. St. Rep. 785, 23 Atl. 211].)

■■ Nor does the fact that certain remedies are provided for in the contract limit the right of the respondents to maintain this action. (*Siem* v. *Cooper, supra; Newton* v. *Hull,* 90 Cal. 487 [27 Pac. 429]; *Reed* v. *Hickey,* 13 Cal. App. 136 [109 Pac. 38]; *Wilcoxson* v. *Stitt,* 65 Cal. 596 [52 Am. Rep. 310, 4 Pac. 629]; *Smith* v. *Mohn,* 87 Cal. 489 [25 Pac. 696]; *New Richmond Land Co.* v. *Ivanovich,* 52 Cal.

App. 222 [198 Pac. 221]; *Burg Bros.* v. *Bercut,* 73 Cal. App. 114 [238 Pac. 166].)

Is the agreement which we are considering the contract of the defendant corporation? The appellant's contention is to the effect that its execution by the president and secretary was unauthorized. An examination of the transcript shows that the agreements bear the signature of the corporation, by its president and secretary, and carry also the impress of the corporate seal. Attached to the agreement is what purports to be a copy of a resolution adopted by the board of directors of the defendant corporation, authorizing the president and secretary of the corporation to enter into the agreement referred to, and in behalf of the corporation to make, execute and deliver any and all documents necessary to effectuate the purchase of the real and personal property referred to in this action.

In 6 California Jurisprudence, page 686, it is said: "The seal of a corporation affixed to an instrument is evidence that it is a corporate act. The modern and by far the more sensible rule is that the seal itself performs no further or greater function than to import *prima facie* verity of the due execution by the corporation of its written obligations, that is, it merely stands as *prima facie* evidence that the contracts made by the corporation are executed by its authority. And so where the seal appears to be affixed to an instrument, and the signatures of the proper officers are approved, courts presume that the officers did not exceed their authority, and that the instrument was executed by authority of the corporation. It follows that the burden in such cases is shifted upon the adversary party to overcome the presumption by showing want of authority in such officers to execute the instrument as that of the corporation." (See, also, *Chandler* v. *Hart,* 161 Cal. 405 [Ann. Cas. 1913B, 1094, 119 Pac. 516]; *Potts Drug Co.* v. *Benedict,* 156 Cal. 322 [25 L. R. A. (N. S.) 609, 104 Pac. 432].)

Other cases might be cited, but the general rule, as we have stated, is supported by all of the California authorities which we have examined, or which have been called to our attention.

Against the presumption to which we have referred, a member of the board of directors of the defendant corporation, named Bruch, testified that the contract was never

authorized at a meeting of the board, and that no resolution was ever passed regarding it. Likewise, a stockholder by the name of Boyer testified that the matter was not passed upon by the board of directors. The secretary testified that the resolution attached to the contract was certified under her signature, but that she knew nothing of the resolution. On cross-examination the witness Boyer testified that he was present when the application to the Commissioner of Corporations was discussed, in which the Lodi plant was mentioned, and that he discussed the matter before the application to the Commissioner of Corporations was filed, and that Neuhoff may have reported to him the purchase of the Lodi plant immediately after the date of the contract.

The director Bruch testified that no action was taken by the board of directors after he had learned of the purchase of the Lodi property. This evidence raised only a conflict, and it was for the trial court to determine whether the evidence offered to overthrow the presumption was sufficient to effect that purpose. That a presumption constitutes evidence and may be considered as such by the court is so well settled by recent California cases that we do not need to cite them. We may, however, refer to the case of *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529].

Again, the witnesses were before the trial court and the presiding judge thereof had an opportunity to weigh the testimony by the manner in which it was given, by the interest of the parties, and the demeanor of the witnesses, and had a right to disregard the oral testimony if such testimony appeared to be unworthy of belief. This was a matter for the trial court to determine, and the trial court having come to the conclusion that the presumption of validity carried by the instruments themselves had not been overcome, must be accepted by us as conclusive. This renders it unnecessary for us to consider at length the long list of cases having to do with the powers of officers of corporations, and the copious extracts from the opinions in such cases set forth in the appellant's brief.

We may further state that the record contains a number of letters written by the appellant corporation, in none of which do we find any reference to lack of authority to execute the agreements on the part of the officers of the corporation. Not until after this suit was instituted was the

question of the validity of the agreements raised. Prior to that time the contention of the appellant appears to have been that it was under no obligations to pay the two installments involved herein, and that all it suffered was the loss of the $2,500 advanced as the first payment of the purchase price of the property covered by the agreement.

The contention is further made that the plaintiff made no proper offer to deliver possession of the premises, and that the letters written by the plaintiff corporation evidenced only a willingness, and did not amount to a tender. The finding of the trial court to the effect that the tender was of April 29, instead of April 25, 1929, is so manifestly a clerical error that we give it no further consideration.

The contract with regard to possession provided for the delivery of certain portions of the property not later than April 25, 1929; as to the warehouses, not later than June 15, 1929. Thus, the vendor was given the privilege of delivering possession at any time before the dates mentioned.

In 55 C. J. 350 we find the following: "If the seller is given the option of delivering the goods at any time within a stated period, he must, to bind the buyer, give notice of his election to deliver before the last day of the period, or such last day will be the day of delivery, in which case no notice is necessary."

The contention of the appellant appears to be, however, not that no notice was given, but that the form of it was insufficient. This letter dated April 22, 1929, addressed by the respondent corporation to the appellant, reads as follows: "We wish to notify you that we will be ready to turn over the buildings and equipment of the cannery at Lodi on April 25, 1929, in accordance with the terms and provisions of that certain agreement between ourselves and the Lodi Canning Company. We shall be pleased to confer with your representative prior to April 25th, if possible, in order to make arrangements for actually delivering this property to you on that day. Yours truly." That this offer was sufficient in form and substance clearly appears from the following quotation which we take from 6 Ruling Case Law, page 949: "It may be pointed out that some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case

of mutual and concurrent promises. The word 'tender', as used in such a connection, does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, and the transaction is completed and ended; but it means only a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability and notice are sufficient evidence of, and indeed imply, an offer or tender in the sense in which those terms are used in reference to mutual and concurrent agreements. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is, in its nature, conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement. All that is ordinarily required of a party to a contract who has agreed to deliver personal property upon the payment of a debt or price is that he shall put the property in some convenient place, subject to the disposal of the payer upon his compliance with the terms of the contract, and that he shall notify the promisor of the fact. However, the fact of readiness to perform locked up in the breast of one of the parties cannot give information to the other party or impose any duty on him.''

The appellant quotes only the last sentence of the foregoing. The answer to the last sentence is found in the letter itself, that the willingness and readiness was not ''locked up in the breast of one of the parties''. The information was conveyed in terms sufficient to notify the appellant of the readiness and willingness of the plaintiff corporation to deliver possession of the property, notwithstanding the fact that the reference in the letter to the agreement was not as specific as it might have been. The property referred to in the different agreements was the same; hence, the defendant was not misled. The circumstances here are altogether different from the circumstances in the cases cited by the appellant.

Thus, in the case of *Bidegaray* v. *Ormaca*, 48 Cal. App. 665 [192 Pac. 176], the personal property was to be taken to a particular place for delivery, and as it was not taken there it was held that no delivery had been made, nor any actual offer. In the case at bar the real estate and personal property were at the same place. In fact, the personal property, as appears by the agreement, was all contained within the buildings or about the buildings situate upon the real estate, and the offer or tender of the possession of the real .property carried with it the personal property contained therein or thereon. We think that the provisions of section 2074 of the Code of Civil Procedure are applicable, by reason of the fact that the vendee did not accept the offer. That section reads: ''An offer in writing to pay a particular sum of money, or to deliver a written instrument or specific personal property is, if not accepted, equivalent to the actual production and tender of the money, instrument or property.'' Likewise, the· provisions of section 2076 of the same code are applicable where it specifies that if the party to whom the offer is made has any objections thereto, he must at the time state such objections.

Again, a formal tender on the twenty-fifth day of June, 1929, was not necessary by reason of the fact that the buyer was not present where the property was situate. Not having attended at the place where the property was situate, and not having made any objections to the form and substance of the offer, we think it is too late now to urge any such technical objections.

As a final ground for reversal the appellant urges certain representations as to freight rates between San Francisco and Lodi, made by one Williams, were untrue; ''that the defendant was misled thereby, and is entitled to rescind on the grounds of fraud''. In the consideration of the defendant's claim for relief on the grounds of fraud, what we have to say will be with reference to all of the remaining objections urged by the appellant.

In addition to a killing frost having occurred after the entering into the agreement herein first referred to, we may state that the record discloses the appellant had in view certain refinancing schemes, and that the condition of the stock market in the early part of 1929 centered the attention of all investors upon the stock board in the city of New

York, and that by reason of such conditions, the appellant was not able to complete its refinancing efforts, and therefore found itself in a difficult situation, which the trial court was justified in taking into consideration in determining whether there was any merit in the grounds set forth to support its attempted rescission.

It appears that one Williams, who was a general broker, stated to the appellant the freight rate from San Francisco to Lodi, and in so doing gave only the freight rate by water transportation from the city of San Francisco to the head of navigation in the city of Stockton. This rate did not include transportation from Stockton to Lodi.

The evidence shows that the appellant had every opportunity to learn the freight rates between the cities of San Francisco and Lodi, and it also leaves for the trial court to determine whether, at the time of making the statement, Williams was an agent of the California Cooperative Producers, a corporation. The evidence also leaves the question for determination by the trial court as to whether the statement was fraudulently made, and also whether the appellant was in fact misled. The record does show that no question was raised concerning the freight rates, no question was raised as to any fraudulent representations, and no attempt was made to rescind until the plaintiffs in this action sought recovery of the two unpaid installments. The evidence disclosed in the record is sufficient also to justify the trial court in holding that the attempted rescission came too late, and that the failure to rescind promptly, if otherwise meritorious, was sufficient to justify the denial of relief on any such grounds.

Some testimony was introduced as to the condition of the plant on April 25, 1929. We find it to be conflicting. Therefore, the conclusion of the trial court that it was in the condition contemplated by the agreements must be sustained.

■ The contention by the appellant that the finding of the trial court that the plaintiffs complied with all the terms of the agreement is not supported by the testimony does not appear to us to be well taken. This view is supported by what we have previously stated herein relative to the delivery in escrow of papers, condition of the plant, and offer to surrender possession.

The briefs submitted for our consideration in this cause are exceedingly voluminous and the citation of cases so numerous as to preclude a review of any considerable number of them. We have, therefore, only cited such cases and set forth herein such matters, and expressed our views thereon, as we think decisive of this cause.

The judgment is affirmed.

Parker, J., *pro tem.*, and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 29, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 25, 1932.